# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

DONNA SHEEDY, On Behalf of Herself and All
Others Similarly Situated,

          Plaintiffs,

      v.

ADVENTIST HEALTH SYSTEM SUNBELT
HEALTHCARE CORPORATION d/b/a
ADVENTIST HEALTH SYSTEM
(HEALTHCARE CORPORATION),
ADVENTIST RETIREMENT BOARD,
ADVENTIST RETIREMENT PLAN
ADMINISTRATIVE COMMITTEE,
ADVENTIST HEALTH SYSTEM BENEFITS
ADMINISTRATION COMMITTEE,
ADVENTIST HEALTH SYSTEM EMPLOYEE
PLAN INVESTMENT COMMITTEE, and
DOES 1-9,

          Defendants.

Civil No. 6:16-cv-01893-GAP-GJK

**DISPOSITIVE MOTION**

**ORAL ARGUMENT REQUESTED**

## DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT AND MEMORANDUM OF LAW IN SUPPORT

## <u>TABLE OF CONTENTS</u>

I.  INTRODUCTION AND RELEVANT BACKGROUND ...................................................... 1

    A.  The Seventh-day Adventist Hospital Retirement Plan ................................................. 6

    B.  The University Community Health System Consolidated Pension Plan ........................... 7

    C.  Plaintiff's Claims in this Lawsuit .......................................................................... 8

II.  STANDARDS OF REVIEW ............................................................................................. 9

III. ARGUMENT .................................................................................................................. 10

    A.  Plaintiff Lacks Constitutional Standing for Each of Her Federal Law Claims
       (Counts I through X) ......................................................................................... 10

       1.  The Irreducible Constitutional Minimum Requirements for Standing ...................... 10

       2.  Plaintiff's Claims of Insufficient Plan Funding (Count V) Should Be Dismissed
          for Lack of Standing ................................................................................... 11

       3.  Plaintiff's Claims for Breach of Fiduciary Duty and Prohibited Transactions
          (Counts VIII and IX) Should Be Dismissed for Lack of Standing ......................... 17

       4.  Plaintiff's Establishment Clause Claim (Count X) Should Be Dismissed
          for Lack of Standing ................................................................................... 18

       5.  Plaintiff's Claims of ERISA Procedural Violations (Counts II, III, IV, VI,
          and VII) Should Be Dismissed for Lack of Standing ...................................... 20

       6.  Plaintiff's Claims for Declaratory and Equitable Relief (Count I) Should Be
          Dismissed for Lack of Standing .................................................................. 22

       7.  Plaintiff Lacks Standing to Assert Any Claims Concerning the Merged Plan
          Because She Is Not a Participant in the Plan ................................................. 22

    B.  The Investment Committee Is Not a Proper Defendant for Any of Plaintiff's
       ERISA Claims .................................................................................................. 24

       1.  Counts II, IV, and VII Should Be Dismissed Against the Investment Committee,
          Which Is Not the Administrator of the Merged Plan ...................................... 25

       2.  Counts III, V, and VI Should Be Dismissed Against the Investment Committee,
          Which Is Not an Employer or Plan Sponsor of the Merged Plan ...................... 26

       3.  Counts VIII and IX for Breach of Fiduciary Duty and Prohibited Transactions
          Should Be Dismissed Against the Investment Committee Because It Does Not
          Have Any Duty or Authority Regarding the Challenged Conduct ...................... 27

4. Count I for Declaratory and Equitable Relief Should Be Dismissed as to the Investment Committee Because the Committee Has No Duty or Authority for the ERISA Requirements on Which the Claim Is Based. ..................................... 30

C. Counts VIII and IX Should Be Dismissed as to All Defendants for Failure to Put Defendants on Notice of the Claims Against Them ................................................ 31

D. Plaintiff Has Improperly Named the Retirement Board, the Hospital Plan Committee, the Merged Plan Committee, and the Investment Committee as Defendants for Several Claims (Counts I, III, V, and IX) Regarding Plans They Have Nothing to Do With ....... 33

E. Counts III, V, and VI Should Be Dismissed Against the Retirement Board, the Hospital Plan Committee, and the Merged Plan Committee, None of Which are the Employers or Plan Sponsors of Either Plan .......................................................... 34

F. Plaintiff's State Law Claims for Breach of Contract and Breach of Fiduciary Duty (Counts XI and XII) Should Be Dismissed ........................................................ 34

1. The Court Lacks Supplemental Jurisdiction over Plaintiff's State Law Claims ........ 34

2. Plaintiff's State Law Claims Fail to Meet Minimum Pleading Standards to Put Defendants on Notice of the Claims Against Them ..................................... 35

3. Plaintiff's State Law Claims Fail for Lack of Standing................................................ 37

4. Count XI Should Be Dismissed Because Plaintiff Fails to State Claim for Breach of Contract ....................................................................... 38

   a. Plaintiff Has Failed to Make Sufficient Allegations that Any Defendant Breached Any Contractual Obligation................................................ 38

   b. Plaintiff Has Failed to Adequately Allege Damages ............................................ 39

5. Count XII Should Be Dismissed Because Plaintiff Fails to State a Claim for Breach of Fiduciary Duty ....................................................................... 40

   a. Plaintiff Has Failed to Make Sufficient Allegations that AHS is a Fiduciary as to the Hospital Plan.......................................................................... 41

   b. Plaintiff Has Failed to Make Sufficient Allegations that Any Defendant Breached Fiduciary Duties................................................................... 42

   c. Plaintiff Has Failed to Make Sufficient Allegations that Any Breach of Fiduciary Duty Caused Her Harm ................................................... 43

G. The Court Should Dismiss the Second Amended Complaint With Prejudice................. 43

IV. CONCLUSION................................................................................................... 44

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) and Local Rule 3.01, Defendants Adventist Health System Sunbelt Healthcare Corporation d/b/a Adventist Health System ("AHS"), Adventist Retirement Board ("Retirement Board"), Adventist Retirement Plan Administrative Committee ("Hospital Plan Committee"), Adventist Health System Benefits Administration Committee ("Merged Plan Committee"), and Adventist Health System Employee Plan Investment Committee ("Investment Committee") (collectively, "Defendants") move to dismiss Plaintiff's Second Amended Class Action Complaint (Dkt. No. 87) ("Second Amended Complaint").

## I.   INTRODUCTION AND RELEVANT BACKGROUND

Plaintiff is now on her third attempt to plead valid claims against Defendants in this case. In its Order on Defendants' previous motion to dismiss, the Court dismissed many of Plaintiff's claims without prejudice.  *See* Order, July 23, 2018 (Dkt. No. 82) ("Motion to Dismiss Opinion" or "Mot. to Dismiss Op.").  In doing so, the Court identified numerous deficiencies in Plaintiff's allegations.  Among other things, the Court found that Plaintiff had failed to establish standing for her plan underfunding claims, that Plaintiff had named the wrong Defendants and/or the wrong plans in several causes of action, and that many of Plaintiff's allegations were insufficient to put Defendants on notice of the claims against them.  Plaintiff has failed to remedy those deficiencies.  The claims and factual allegations in the Second Amended Complaint remain utterly inadequate, and the Court should dismiss this lawsuit with prejudice.

As a threshold matter, all of Plaintiff's claims should be dismissed because she has failed to establish standing under Article III of the Constitution.  To meet her burden to demonstrate standing, Plaintiff must plead an injury that is "concrete and particularized" and "actual or imminent."  In the Motion to Dismiss Opinion, the Court dismissed Plaintiff's plan underfunding

claims for lack of standing because "Plaintiff has not adequately pleaded that she faces a substantial, rather than merely speculative, risk of future injury."  Mot. to Dismiss Op. at 8. Plaintiff has not corrected this failure.  Her Second Amended Complaint still does not allege that either of the plans at issue has ever failed to pay a single dollar of promised retirement benefits to her, or that she (or any other putative class member) has been harmed in any concrete way by the plans' having been operated as church plans.  Plaintiff likewise has failed to allege the requisite injury for any of her other ERISA claims or state law claims.  Additionally, Plaintiff lacks standing for all of her claims concerning the University Community Health System Consolidated Pension Plan (the "Merged Plan") for the independent reason that Plaintiff is not a participant in or beneficiary of that plan.

Even if she had standing, Plaintiff's factual allegations fall well short of satisfying minimum pleading standards under the Federal Rules of Civil Procedure.  Like its predecessors, the Second Amended Complaint is replete with conclusory assertions completely lacking any plausible factual basis, and a number of Plaintiff's allegations are directly contradicted by the very plan documents she cites in her pleading.  Plaintiff also continues to lump Defendants together, without differentiating which Defendant is alleged to have done what, thereby failing to put individual Defendants on notice of the claims against them.  Compounding these pleading failures, Plaintiff has named a new defendant—the Investment Committee—which is not a proper defendant for any of Plaintiff's claims.

Plaintiff has had more than two years, multiple opportunities to replead, and the benefit of the Court's guidance from the Motion to Dismiss Opinion—yet, she has still failed to satisfy her pleading requirements.  Plaintiff should not be allowed another bite at the apple.

For the Court's convenience, Defendants have prepared the chart below summarizing the reasons for dismissal of each of Plaintiff's causes of action:

| Claims | Hospital Plan | Merged Plan |
|---|---|---|
| **Count I** (Declaratory Judgment, Against All Defendants) | • Lack of standing, no injury [III.A.6].<br>• Merged Plan and Investment Committees improperly named as defendants [III.D]. | • Lack of standing, no injury [III.A.6].<br>• Lack of standing, Plaintiff not participant or beneficiary [III.A.7].<br>• Investment Committee is improper defendant [III.B.4].<br>• Retirement Board and Hospital Plan Committee improperly named as defendants [III.D]. |
| **Count II** (ERISA Annual Reports, Against Retirement Board, Hospital Plan Committee, Merged Plan Committee, Investment Committee) | • Lack of standing, no injury [III.A.5]. | • Lack of standing, no injury [III.A.5].<br>• Lack of standing, Plaintiff not participant or beneficiary [III.A.7].<br>• Investment Committee is improper defendant [III.B.1]. |
| **Count III** (ERISA Underfunding Notices, Against Retirement Board, Hospital Plan Committee, Merged Plan Committee, Investment Committee) | • Lack of standing, no injury [III.A.5].<br>• Merged Plan and Investment Committees improperly named as defendants [III.D].<br>• Board and Hospital Plan Committee are improper defendants [III.E]. | • Lack of standing, no injury [III.A.5].<br>• Lack of standing, Plaintiff not participant or beneficiary [III.A.7].<br>• Investment Committee is improper defendant [III.B.2].<br>• Board and Hospital Plan Committee improperly named as defendants [III.D].<br>• Merged Plan Committee is improper defendant [III.E]. |

| Claims | Hospital Plan | Merged Plan |
|---|---|---|
| **<u>Count IV</u>**<br>(ERISA Funding Notices, Against Retirement Board, Hospital Plan Committee, Merged Plan Committee, Investment Committee) | • Lack of standing, no injury [III.A.5]. | • Lack of standing, no injury [III.A.5].<br><br>• Lack of standing, Plaintiff not participant or beneficiary [III.A.7].<br><br>• Investment Committee is improper defendant [III.B.1]. |
| **<u>Count V</u>**<br>(Underfunding, Against All Defendants) | • Lack of standing, no injury [III.A.2].<br><br>• Merged Plan and Investment Committees improperly named as defendants [III.D].<br><br>• Board and Hospital Plan Committee are improper defendants [III.E]. | • Lack of standing, no injury [III.A.2].<br><br>• Lack of standing, Plaintiff not participant or beneficiary [III.A.7].<br><br>• Investment Committee is improper defendant [III.B.2].<br><br>• Board and Hospital Plan Committee improperly named as defendants [III.D].<br><br>• Merged Plan Committee is improper defendant [III.E]. |
| **<u>Count VI</u>**<br>(Failure to Adopt Plan Instrument, Against All Defendants) | • Lack of standing, no injury [III.A.5].<br><br>• Board and Hospital Plan Committee are improper defendants [III.E]. | • Lack of standing, no injury [III.A.5].<br><br>• Lack of standing, Plaintiff not participant or beneficiary [III.A.7].<br><br>• Investment Committee is improper defendant [III.B.2].<br><br>• Merged Plan Committee is improper defendant [III.E]. |
| **<u>Count VII</u>**<br>(Civil Penalties, Against Retirement Board, Hospital Plan Committee, Merged Plan Committee, Investment Committee) | • Lack of standing, no injury [III.A.5]. | • Lack of standing, no injury [III.A.5].<br><br>• Lack of standing, Plaintiff not participant or beneficiary [III.A.7].<br><br>• Investment Committee is |

| Claims | Hospital Plan | Merged Plan |
|---|---|---|
| | | improper defendant [III.B.1]. |
| **Count VIII**<br><br>(Fiduciary Breach, Against Retirement Board, Hospital Plan Committee, Merged Plan Committee, Investment Committee) | • Lack of standing, no injury [III.A.3].<br><br>• Fails to plead breach [III.C]. | • Lack of standing, no injury [III.A.3].<br><br>• Lack of standing, Plaintiff not participant or beneficiary [III.A.7].<br><br>• Investment Committee is improper defendant [III.B.3].<br><br>• Fails to plead breach [III.C]. |
| **Count IX**<br><br>(Prohibited Transactions, Against Retirement Board, Hospital Plan Committee, Merged Plan Committee, Investment Committee) | • Lack of standing, no injury [III.A.3].<br><br>• Fails to plead breach [III.C].<br><br>• Merged Plan and Investment Committees improperly named as defendants [III.D]. | • Lack of standing, no injury [III.A.3].<br><br>• Lack of standing, Plaintiff not participant or beneficiary [III.A.7].<br><br>• Investment Committee is improper defendant [III.B.3].<br><br>• Fails to plead breach [III.C].<br><br>• Board and Hospital Plan Committee improperly named as defendants [III.D]. |
| **Count X**<br><br>(Establishment Clause Violation) | • Lack of standing, no injury [III.A.4]. | • Lack of standing, no injury [III.A.4].<br><br>• Lack of standing, Plaintiff not participant or beneficiary [III.A.7]. |
| **Count XI**<br><br>(State Law Breach of Contract, Against All Defendants) | • Lack of supplemental jurisdiction [III.F.1].<br><br>• Fails to state a claim [III.F.2].<br><br>• Lack of standing, no injury [III.F.3]. | • Lack of standing, Plaintiff not participant or beneficiary [III.A.7].<br><br>• Lack of supplemental jurisdiction [III.F.1].<br><br>• Fails to state a claim |

| Claims | Hospital Plan | Merged Plan |
|---|---|---|
| | • Fails to plead breach or damages [III.F.4.a and b]. | [III.F.2]. <br> • Lack of standing, no injury [III.F.3]. <br> • Fails to plead breach or damages [III.F.4.a and b]. |
| **Count XII** <br> (State Law Fiduciary Breach, Against All Defendants) | • Lack of supplemental jurisdiction [III.F.1]. <br> • Fails to state a claim [III.F.2]. <br> • Lack of standing, no injury [III.F.3]. <br> • Fails to allege fiduciary duty as to AHS [III.F.5.a]. <br> • Fails to plead breach or damages [III.F.5.b and c]. | • Lack of standing, Plaintiff not participant or beneficiary [III.A.7]. <br> • Lack of supplemental jurisdiction [III.F.1]. <br> • Fails to state a claim [III.F.2]. <br> • Lack of standing, no injury [III.F.3]. <br> • Fails to plead breach or damages [III.F.5.b and c]. |

A.      **The Seventh-day Adventist Hospital Retirement Plan**

Defendants provided relevant background material concerning the Defendants, the plans at issue, and the Seventh-day Adventist Church in their previous motion to dismiss.  *See* Dkt. No. 62.  Although that background material remains relevant to this motion, there is no need to reiterate it here.  Defendants will instead provide a brief recap.

There are two plans at issue in this case.  The first is the Seventh-day Adventist Hospital Retirement Plan, a defined benefit pension plan (the "Hospital Plan").  The Hospital Plan was adopted by the General Conference of Seventh-day Adventists many decades ago for the benefit of the Seventh-day Adventist Church's healthcare workers.  *See* Ex. A to the Declaration of Lars C. Golumbic in Support of Defendants' Motion to Dismiss Plaintiff's Second Amended

Complaint ("Golumbic Decl.") at 1.[1]  Plaintiff Sheedy alleges that she is a participant in the Plan. 2d Am. Compl. ¶ 14.  The most recent version of the Hospital Plan was amended and restated effective January 1, 2012.  Ex. A. to Golumbic Decl. at 1.  The Plan operates as a church plan.

The Hospital Plan is administered by the Retirement Board and, to the extent certain administrative responsibilities have been delegated to it by the Retirement Board, the plan is also administered by the Hospital Plan Committee.  *Id.* at §§ 1.1, 1.3, 7.1, 7.4, 7.5.

## B.    The University Community Health System Consolidated Pension Plan

The Second Amended Complaint also asserts claims concerning Merged Plan.  The Merged Plan is the product of a merger, effective December 31, 2015, of two plans: the University Community Hospital, Inc. Retirement Plan and the Helen Ellis Memorial Hospital Pension Plan.  *See* Ex. B to Golumbic Decl. at 6.  Plaintiff Sheedy is not a participant in or beneficiary of the Merged Plan.  *See* Declaration of Rena L. Freeman in Support of Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint ("Freeman Decl.") ¶ 5.

The Merged Plan is administered by the Merged Plan Committee.  Ex. B to Golumbic Decl. § 8.01.  The Investment Committee, a new Defendant named in the Second Amended Complaint, does not administer the Merged Plan.  *See id.* at Art. VIII.  Among the Investment Committee's duties are "determin[ing] the investment policy" for the Merged Plan and other

---

[1] The Court may properly consider at this stage the plan documents for the Plans and other documents referenced in the Second Amended Complaint because, as the Eleventh Circuit has observed, "a document central to the complaint that the defense appends to its motion to dismiss is also properly considered, provided that its contents are not in dispute."  *Harris v. Ivax Corp.*, 182 F.3d 799, 802 n.2 (11th Cir. 1999); *see also Griffin v. Habitat for Humanity Int'l, Inc.*, 641 F. App'x 927, 928 n.1 (11th Cir. 2016) (providing in ERISA case that "[w]e also consider the . . . Plan document, which Habitat submitted to the district court with its motion to dismiss.  Although Dr. Griffin did not attach this document to her complaint, we may consider it because it is central to the complaint and its contents are not in dispute").

plans for AHS employees, and "establish[ing] the asset allocation policy for Plan assets." *See* Ex. C to Golumbic Decl. at 1.[2]

Long before Plaintiff filed her initial Complaint, and although not required to do so because the plan qualifies as a church plan, the Merged Plan Committee elected to operate the plan (and has operated the plan) as an ERISA plan as of January 1, 2016.  Ex. B to Golumbic Decl. at 6.  Plaintiff acknowledges this.  2d Am. Compl. ¶ 8.  Because Plaintiff's case regarding the Merged Plan is based on the assertion that the Plan should be made to comply with ERISA, the fact that the Plan is operated as an ERISA plan should moot Plaintiff's claims, as Defendants will show at the appropriate time if this case is not dismissed.  As shown below, however, the Court need not reach the issue of the Merged Plan's ERISA-compliant status to dismiss the Second Amended Complaint.

## C.      Plaintiff's Claims in this Lawsuit

In her Second Amended Complaint, Plaintiff claims that the Hospital Plan and the Merged Plan (collectively, the "Plans") do not qualify for the church plan exemption and, therefore, were required to comply with ERISA but failed to do so.  Nine of Plaintiff's twelve claims assert that Defendants are liable for not satisfying various ERISA requirements, including alleged failures to provide certain notices and disclosures to plan participants and the federal government, failures to fund the Plans to ERISA-required levels, and breaches of fiduciary duties under ERISA.  2d Am. Compl. ¶¶ 114-178.  Count X is an alternative claim that the church plan exemption violates the Establishment Clause.  *Id.* ¶¶ 179-82.  In Counts XI and XII, Plaintiff

---

[2] Pursuant to the authorities cited in Footnote 1, above, the Court may properly consider the Investment Committee's Charter because it is referenced in, and central to, the Second Amended Complaint.  *See* 2d Am. Compl. ¶ 19.

raises two alternative claims under state law for breach of contract and breach of fiduciary duty.[3]

*Id.* ¶¶ 183-216.

## II.    <u>STANDARDS OF REVIEW</u>

Plaintiff's Second Amended Complaint should be dismissed for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). "The plaintiff bears the burden of establishing subject-matter jurisdiction." *Lawrence v. United States*, 597 Fed. App'x 599, 602 (11th Cir. 2015). A defendant's "[a]ttacks on jurisdiction can be either facial or factual." *Hadar v. Broward Cnty.*, No. 16-14569, 2017 WL 2364361, at *4 (11th Cir. May 31, 2017). As shown below, on the face of her Second Amended Complaint, Plaintiff has failed to allege facts demonstrating that she has suffered an injury sufficient to confer standing for any of her claims concerning the Plans. Further, evidence presented by Defendants and properly considered by the Court under a factual challenge establishes that Plaintiff lacks standing to sue with respect to the Merged Plan because she is not a participant in the plan. Accordingly, Plaintiff has failed to establish the Court's subject matter jurisdiction.

Defendants also seek to dismiss certain of Plaintiff's claims for failure to state a claim upon which relief may be granted. To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead "a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A plaintiff need not plead 'detailed factual

---

[3] Plaintiff raised several claims in her Amended Complaint that she has dropped from the Second Amended Complaint. Specifically, she is no longer pursuing (1) a claim that defendants failed to establish the Plans under an ERISA-compliant trust; (2) a claim for clarification of benefits; (3) a claim for breach of fiduciary duty for failing to monitor fiduciaries; (4) a claim for co-fiduciary liability; and (5) a state law unjust enrichment claim. *See* Am. Compl. ¶¶ 130-137; 161-77; 198-209. Plaintiff did not update her Prayer for Relief accordingly, however, which now erroneously seeks a judgment "[r]equiring clarification of rights to future benefits pursuant to ERISA section 502(a)(1)(B), 29 U.S.C. § 1102(a)(1)(B)" and "[r]equiring the establishment of a trust in compliance with ERISA section 403, 29 U.S.C. § 1103," *see* 2d Am. Compl. at p. 43, even though none of her present claims would entitle her to such relief. Defendants reserve the right to move to strike these statements in the Prayer for Relief if the Second Amended Complaint is not dismissed in full.

allegations,' but he must demonstrate 'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'"  *Simpson v. Sanderson Farms, Inc.*, 744 F.3d 702, 708 (11th Cir. 2014) (quoting *Twombly*, 550 U.S. at 555).  While the Court must accept Plaintiff's well-pleaded facts as true, "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal."  *Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1320 (11th Cir. 2006) (citations omitted).  As demonstrated below, multiple claims in the Second Amended Complaint should be dismissed because Plaintiff has failed to satisfy her minimum pleading requirements.

## III.   ARGUMENT

### A.   Plaintiff Lacks Constitutional Standing for Each of Her Federal Law Claims (Counts I through X)

Plaintiff is the party invoking this Court's jurisdiction, and therefore she bears the burden of pleading and demonstrating subject matter jurisdiction.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 556 (1992).  Because she has suffered no injury, Plaintiff has no standing to call upon the Court's time and resources.

### 1.   The Irreducible Constitutional Minimum Requirements for Standing

The Constitution limits the Court's jurisdiction to actual cases and controversies.  Art. III, § 2, cl. 1.  To establish Article III standing, first, "the plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical."  *Lujan*, 504 U.S. at 560 (citations and quotations omitted).  A particularized injury is one that affects the plaintiff in a personal and individual way.  *Spokeo Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016).  To be concrete, an injury "must actually exist," *see id.*, and a mere statutory violation, without more, does not amount to a concrete injury, *see Lee v. Verizon Commc'ns, Inc.*, 837 F.3d 523, 530 (5th Cir. 2016) ("We . . .

10

decline to conflat[e] the concepts of statutory and constitutional standing by holding that incursion on a statutorily-conferred interest in proper plan management is sufficient in itself to establish Article III standing.") (citations and quotations omitted) (alteration in original). Second, "there must be a causal connection between the injury and the conduct complained of— the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant . . . .'" *Lujan*, 504 U.S. at 560 (citations omitted) (alteration in original).  Third, it must be "likely," not merely "'speculative,' that the injury will be 'redressed by a favorable decision.'"  *Id*. at 561 (citations omitted).  The Supreme Court has held these elements of standing to be an "irreducible constitutional minimum."  *Id*. at 560.

### 2.    Plaintiff's Claims of Insufficient Plan Funding (Count V) Should Be Dismissed for Lack of Standing

In its Motion to Dismiss Opinion, the Court dismissed Plaintiff's claims that the Plans are insufficiently funded under ERISA.  The Court held that Plaintiff had failed to adequately plead that the Plans were underfunded and had failed to allege an injury sufficient to establish standing. Mot. to Dismiss Op. at 8.  Plaintiff has not corrected these deficiencies in the Second Amended Complaint, and her underfunding claims should be dismissed for lack of standing.

Although, as the Motion to Dismiss Opinion pointed out, the Eleventh Circuit has not spoken to whether a plaintiff can establish constitutional standing for claims that a defined benefit plan is underfunded, many other courts have addressed the question and concluded that speculative claims based on alleged "risks"—like Plaintiff's claims here—are inadequate.  *See Feather v. SSM Health*, No. 4:16CV1669HEA, 2018 WL 3536613, at *4 (E.D. Mo. July 23, 2018) ("Plaintiffs would suffer an actual injury if the Plans fail to pay benefits, but Plaintiffs do not allege that the Plans have not paid benefits."); *Lee*, 837 F.3d at 545-46 (holding that, even though plaintiff alleged the plan was "66% actuarially funded," the plaintiff's "allegations do not

further allege the realization of risks which would create a likelihood of direct injury to participants' benefits"); *Perelman v. Perelman*, 793 F.3d 368, 374 (3d Cir. 2015) ("[E]ven if the defendants' dealings resulted in a diminution in Plan assets, they are insufficient to confer standing upon [plaintiff] absent a showing of individualized harm."); *David v. Alphin*, 704 F.3d 327, 338 (4th Cir. 2013) ("We find on this record the alleged risk [to plan funding] to be insufficiently 'concrete and particularized' to constitute an injury-in-fact for Article III standing purposes."); *Harley v. Minn. Mining & Mfg. Co.*, 284 F.3d 901, 908 (8th Cir. 2002) (finding no injury sufficient to establish standing for claims based on defined benefit plan investment losses because, *inter alia*, the plan had a funding surplus and there was no evidence the plan would terminate in the foreseeable future). These courts have rejected a "risk-based" theory of standing like Plaintiff's because "a participant in a defined benefit pension plan has an interest in his fixed future payments only, not the assets of the pension fund." *David*, 704 F.3d at 338 (citing *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 439-40 (1999)); *see also Lee*, 837 F.3d at 530. In a defined benefit plan governed by ERISA, the risk of underfunding falls on the company that sponsors the plan, not on the participants. *See David*, 704 F.3d at 338. Even if the plan is underfunded at a given moment—particularly without any allegation that the plan sponsor lacks the resources to pay benefits—that does not constitute an "actual or imminent" injury to the participants. *See id*; *Lee*, 837 F.3d at 544. Thus, for defined benefit plans like the Plans here, "these risk-based theories of standing [are] unpersuasive, not least because they rest on a highly speculative foundation lacking any discernible limiting principle." *David*, 704 F.3d at 338.

Relying on many of these authorities, the court in *Feather v. SSM Health*, another church plan case, recently dismissed underfunding claims similar to Plaintiff's claims here for lack of standing. *See* 2018 WL 3536613, at *4-5. Indeed, the court found that the plaintiffs had not

established standing for any of their claims and dismissed the lawsuit in full on that basis.  Like Plaintiff here, the plaintiffs in *Feather* claimed that certain pension plans did not qualify as church plans and that the defendants failed to adequately fund those plans under ERISA.  *Id.* at *4.  The court found that while "[t]he Eighth Circuit has found that a participant in an overfunded defined benefit plan does not have an injury because their benefits are not affected[,]" this "does not mean that participants have an injury if a plan is less than 100% funded." *Id*.  And, in rejecting the plaintiffs' ERISA underfunding claim, the court concluded that the plaintiffs did not "allege an imminent injury" sufficient to establish constitutional standing because they did not "allege that the Plans have not paid benefits," or that "the Plans are terminating or that SSM Health would be unable to cover the alleged underfunding if the Plans terminate."  *Id*.  Rather than pleading the necessary concrete, particularized injury, "Plaintiffs' allegations of future harm are speculative and insufficient to confer standing."  *Id.*

Consistent with the authorities discussed above, in this case, the Court held in the Motion to Dismiss Opinion that merely alleging that a pension plan is underfunded is insufficient to establish an injury that confers constitutional standing.  Mot. to Dismiss Op. at 8.  With respect to the Hospital Plan, the Court found Plaintiff's allegations of underfunding deficient because the very document Plaintiff relied upon—the 2016 Audited Consolidated Financial Statements—showed that the Hospital Plan was *overfunded*.  *Id.*  With respect to the Merged Plan, the Court found that, even assuming Plaintiff alleged that the Merged Plan was underfunded, she "has not adequately pleaded that she faces a substantial, rather than merely speculative, risk of future injury."  *Id.*  The Court, therefore, dismissed Plaintiff's underfunding claims without prejudice and permitted Plaintiff an opportunity to amend her complaint a second time.

***The Merged Plan.***    Plaintiff's Second Amended Complaint fails to remedy the deficiencies in Plaintiff's underfunding claims identified by the Court.   With respect to the Merged Plan, to begin with, Plaintiff has still failed to allege that the Plan is underfunded on an ERISA basis.   Plaintiff asserts that the Plan is underfunded by $38.8 million.   2d Am. Compl. ¶ 111.   That is ***not*** the Plan's funded status under ERISA.   As in her last complaint, although the entire basis of Plaintiff's claim is that the Merged Plan should have complied with ERISA's funding requirements, Plaintiff ignores the ERISA funded status of the Plan.[4]   The Merged Plan's 2016 Form 5500—publicly available and produced by Defendants nearly five months before Plaintiff filed her Second Amended Complaint—shows that the Plan's funding target attainment percentage was 109.13% in that year.   *See* Ex. D to Golumbic Decl. at ADVENTIST_0000490.   As defined under ERISA, the "funding target attainment percentage" "of a plan for a plan year is the ratio (expressed as a percentage) which—(A) the value of plan assets for the plan year . . . , bears to (B) the funding target of the plan for the plan year . . . ."   29 U.S.C. § 1083(d)(2).   In other words, the Merged Plan is 109.13% funded on an ERISA basis.   Thus, any allegation that the Merged Plan is insufficiently funded on an ERISA basis plainly is contradicted by the Plan's annual report to the U.S. Department of Labor.

Regardless, even if Plaintiff had properly alleged that the Merged Plan was underfunded on an ERISA basis, that is not enough to establish standing.   As the Court held in the Motion to Dismiss Opinion, to plead an injury sufficient to establish standing, Plaintiff was required to: (1) "explain what benefit she is entitled to under the Merged Plan" and "when that benefit is due"; (2) "indicate whether the Merged Plan has ever failed to make a required payment"; and (3)

---

[4] Plaintiff's $38.8 million figure appears to come from an actuarial valuation report for the Merged Plan that Defendants produced to Plaintiff, which shows the Plan underfunded by that amount on a GAAP accounting basis, *not* on an ERISA basis.   The same report states that the Merged Plan is *overfunded* by more than $11 million on an ERISA basis—which Plaintiff conspicuously leaves out of the Second Amended Complaint.

"indicate when the Merged Plan will need additional funding in order to meet its payment obligations."  Mot. to Dismiss Op. at 8.  As in her last complaint, Plaintiff has failed to allege any of these facts (nor could she because she is not a participant in the Merged Plan, as discussed below).  Accordingly, her claims of injury are merely speculative, and she has failed to establish standing.

  ***The Hospital Plan.***  Plaintiff's allegations regarding the Hospital Plan are similarly inadequate to establish standing.  As with the Merged Plan, Plaintiff once again fails to allege that the Hospital Plan is underfunded on an ERISA basis.  She conspicuously removes from her pleading of any references to the 2016 Audited Consolidated Financial Statements—the document she relied upon in her last amended complaint.  Instead, Plaintiff cites outdated and irrelevant financial accounting figures from 2009 to 2012 that she claims show the Hospital Plan was underfunded in the past.  2d Am. Compl. ¶ 102.  Of course, that is not a coincidence.  As the Court pointed out in dismissing Plaintiff's underfunding claim, "[a]ccording to the December 31, 2016 Audited Consolidated Financial Statements, the Hospital Plan is funded at 100.1% of its benefit obligations."  Mot. to Dismiss Op. at 8.

  Unable to rely on the current consolidated financial statements, Plaintiff cites an unspecified "recent actuarial analysis" of the Hospital Plan, which she claims shows the plan is underfunded.  2d Am. Compl. ¶ 106.  Defendants are not aware of any recent actuarial valuation of the Hospital Plan showing that the Plan is underfunded.  While Plaintiff throws around various figures—many of which appear to have been plucked from thin air—the net result is that, once again, she fails to allege that the Hospital Plan is inadequately funded ***under ERISA***.  Indeed, the assumptions Plaintiff uses in her funding-related allegations are demonstrably ***not*** the assumptions that plans are required to use under ERISA.  For example, Plaintiff asserts that a

discount rate of "4.65% or less" should be applied to the Hospital Plan.  *Id.* ¶ 106.  If ERISA governed the Plan, however, its funding target for purposes of ERISA compliance would be based on different discount rates published by the IRS.  *See* "Funding Yield Curve Segment Rates,"  https://www.irs.gov/retirement-plans/funding-yield-curve-segment-rates  (last  visited Nov. 8, 2018).  The weighted average of the ERISA discount rates in effect on January 1, 2016, across all plans submitting data to the U.S. Department of Labor, is approximately 5.89%.  *See* "Form  5500  Datasets,"  https://www.dol.gov/agencies/ebsa/about-ebsa/our-activities/public-disclosure/foia/form-5500-datasets (last visited Nov. 8, 2018).  This figure is substantially higher than the rate Plaintiff contends should be applied, and indeed is nearly the same as the 6.00% rate that she claims would be "unjustified," *see* 2d Am. Compl. ¶ 106, meaning that the ERISA funding target would likely be substantially lower than the liability figures on which Plaintiff's underfunding claim is based.  Thus, despite that fact that Defendants have produced actuarial valuation reports and other materials that would allow Plaintiff to determine and allege the funded status of the Hospital Plan under ERISA, Plaintiff has chosen to not do so.

Again, however, even if Plaintiff had adequately alleged that the Hospital Plan is underfunded on an ERISA basis, that alone is not enough to establish standing.  Plaintiff was required to plead "that she faces a substantial, rather than merely speculative, risk of future injury."  Mot. to Dismiss Op. at 8.  But, as with the Merged Plan, Plaintiff has failed to do so.  Exactly as in her prior pleading, Plaintiff still alleges only that Defendants' "failure to treat the Plans as ERISA plans puts the Plans' participants at risk of receiving pension payments drastically lower than those proposed," 2d Am. Compl. ¶ 95, and that she "faces substantial risk of her pension being lost or severely reduced," *id.* ¶ 141.  Thus, the Second Amended Complaint remains devoid of ***any*** allegation that ***any*** participant in ***any*** pension plan at issue in this case has

*ever* failed to receive a single penny of benefits due.  Nor has Plaintiff made any of the other allegations of injury that the Court required in the Motion to Dismiss Opinion.  *See* Mot. to Dismiss Op. at 8.  In short, Plaintiff's underfunding claims in Count V should be dismissed for lack of standing because she has failed to plead anything more than a hypothetical future injury.

### 3.  Plaintiff's Claims for Breach of Fiduciary Duty and Prohibited Transactions (Counts VIII and IX) Should Be Dismissed for Lack of Standing

Plaintiff's claims for breach of fiduciary duty and prohibited transactions under ERISA— which are based on the same conduct and the same speculative allegations of injury as the underfunding claims—should be dismissed for lack of standing for the same reasons.  In Count VIII and Count IX, Plaintiff claims that Defendants breached fiduciary duties under 29 U.S.C. § 1104(a) and caused prohibited transactions under 29 U.S.C. § 1106(a) and (b) by failing to make sufficient contributions to the Plans to satisfy ERISA's minimum funding requirements.  *See* 2d Am. Compl. ¶¶ 163, 171-76.  In other words, these causes of action are based on the same alleged failure to adequately fund the Plans as Count V.[5]  Under ERISA, a plaintiff may sue to remedy such alleged violations under 29 U.S.C. § 1132(a)(2)—which allows a plan participant to seek relief under 29 U.S.C. § 1109(a) to hold a fiduciary breaching duties to a plan "personally liable to make good to such plan any losses to the plan resulting from each such breach"—or under 29 U.S.C. § 1132(a)(3), which enables a participant to seek certain equitable relief.

Courts have dismissed similar claims for breach of fiduciary duty under sections 1132(a)(2) and 1132(a)(3) for lack of standing in cases where plaintiffs failed to allege that they had not received benefits from their pension plans.  *See, e.g., Lee*, 837 F.3d at 543-44 (affirming dismissal of fiduciary breach claims under 29 U.S.C. §§ 1132(a)(2) and 1132(a)(3) for lack of

---

[5] To the extent the breach of fiduciary duty claim in Count VIII is also based on an alleged failure to provide ERISA-compliant notices and disclosures or an ERISA-compliant written instrument, the claim fails for lack of standing for the reasons discussed in Section III.A.5 below.

Article III standing, reasoning that "fiduciary misconduct, standing alone without allegations of impact on individual benefits, is too removed to establish the requisite injury"); *Feather*, 2018 WL 3536613, at *4 (dismissing claims for breach of fiduciary duty and prohibited transactions under 29 U.S.C. §§ 1132(a)(2) and 1132(a)(3) for failure to allege that the plans at issue had not paid benefits).  Indeed, in *Feather*, the court dismissed similar claims for breach of fiduciary duty and prohibited transactions in the church plan context for lack of standing.  2018 WL 3536613, at *4.  There, as here, "Plaintiffs allege[d] . . . that [defendant] has failed to make sufficient contributions to the Trust, leaving the Plans underfunded."  *Id.*  The court dismissed the claims for lack of standing, finding that the plaintiffs failed to allege an "imminent injury": "Plaintiffs would suffer an actual injury if the Plans fail to pay benefits, but Plaintiffs do not allege that the Plans have not paid benefits."  *Id.*

The same is true in this case.  As shown above, nowhere in the Second Amended Complaint does Plaintiff allege that she (or any other participant) failed to receive a promised benefit payment from either the Hospital Plan or the Merged Plan.  Nor, for that matter, has she alleged that either Plan is on the brink of default or termination without the ability to pay the participants their promised benefits.  Counts VIII and IX, therefore, should be dismissed for lack of standing.

4.     **Plaintiff's Establishment Clause Claim (Count X) Should Be Dismissed for Lack of Standing**

Plaintiff's Establishment Clause claim should be dismissed for lack of standing because Plaintiff fails to allege that she has suffered an injury-in-fact caused by the Plans' being operated as church plans.  In *Overall v. Ascension*, another church plan case, the court dismissed an identical Establishment Clause claim because the plaintiff's complaint lacked "specific allegations . . . to suggest plaintiff would have a better funded pension if the Court were to strike

down the church plan exemption provisions of ERISA, or the exemption as applied to [the defendant]." 23 F. Supp. 3d 816, 832-33 (E.D. Mich. 2014). The court added: "The allegations related to plaintiff's constitutional claim . . . are simply generic recitations of perceived harms." *Id.* at 833; *see also Feather*, 2018 WL 3536613, at *6 (dismissing Establishment Clause challenge to church plan exemption for lack of standing based on reasoning of *Overall*); *Sanzone v. Mercy Health*, 326 F. Supp. 3d 795, 809 (E.D. Mo. 2018) (dismissing Establishment Clause challenge to church plan exemption for lack of standing, reasoning "[w]hile plaintiffs raise the specter of a potentially underfunded Plan in the future without ERISA protections, they make no claim of any specific or concrete injury suffered by them as a consequence of being a participant in a church plan").

So too here.  Plaintiff's Establishment Clause claim mirrors the plaintiff's claim in *Overall*.  *See* 2d Am. Compl. ¶¶ 179-82; *Overall*, 23 F. Supp. 3d at 821, 832.  Like the plaintiff in *Overall*, Plaintiff simply recites generic, perceived harms without any plausible supporting factual allegations.  For instance, Plaintiff alleges in conclusory fashion that applying the church plan exemption to the Plans puts AHS's employees' "pension benefits at great risk," and causes AHS's competitors to "face material disadvantages."  2d Am. Compl. ¶ 181.B, C.  Even if such bald allegations satisfied minimum pleading standards under Rule 8, the allegations do not establish that Plaintiff has suffered a ***personal*** injury if hospitals competing with AHS are disadvantaged, or that the Plans would be better funded if the Court struck down the church plan exemption.  *Overall*, 23 F. Supp. 3d at 832-33; *see also Sanzone*, 326 F. Supp. 3d at 809 (finding that "plaintiffs make no specific allegations to suggest that they would have a better funded pension if the church-plan exemption did not apply to the Mercy Plan").  Like the claims in *Overall*, Plaintiff's claims here are purely speculative, and she "does not allege any specific or

19

concrete injury suffered by [her] as a consequence of being a participant in a church plan."
*Overall*, 23 F. Supp. 3d at 833.

5.     **Plaintiff's Claims of ERISA Procedural Violations (Counts II, III, IV, VI, and VII) Should Be Dismissed for Lack of Standing**

Plaintiff lacks constitutional standing to assert her ERISA procedural violation claims because she has not suffered a concrete injury.  In Counts II, III, IV, VI, and VII, Plaintiff alleges various procedural violations with respect to the Plans—including the failure to provide certain notices and disclosures, and the failure to establish the Plans pursuant to an ERISA-compliant written instrument.  Plaintiff fails to allege harm or injury in ***any*** of these causes of action.

"A 'concrete' injury must be '*de facto*'; that is, it must actually exist."  *Spokeo*, 136 S. Ct. at 1548.  "It is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing."  *Id.* at 1547-48.  "Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.  *Article III standing requires a concrete injury even in the context of a statutory violation*."  *Id.* at 1549 (emphasis added).  Alleging "a bare procedural violation, divorced from any concrete harm" does not "satisfy the injury-in-fact requirement of Article III."  *Id.*; *see also Nicklaw v. Citimortgage, Inc.*, 839 F.3d 998, 1003 (11th Cir. 2016) ("[T]he requirement of concreteness under Article III is not satisfied every time a statute creates a legal obligation and grants a private right of action for its violation.  A plaintiff must suffer some harm or risk of harm from the statutory violation to invoke the jurisdiction of a federal court.").

Courts have held in the ERISA context that merely alleging that a defendant has violated notice and reporting requirements or other procedural requirements is not sufficient to establish

constitutional standing—the plaintiff must still allege a concrete injury.  *See Feather*, 2018 WL 3536613, at *5 (dismissing ERISA notice and reporting claims for lack of constitutional standing); *Guenther v. BP Ret. Accumulation Plan*, No. 4:16-CV-995, 2017 WL 6611634, at *5 (S.D. Tex. Feb. 17, 2017) ("The Court will first consider whether the statutory violations alleged by Plaintiffs [i.e., violations of ERISA Section 502, including the alleged failure to provide notice of reductions in the rate of future benefit accruals and the failure to provide summary plan descriptions] are sufficient to demonstrate an injury in fact.  The Court does not believe that Plaintiffs' allegations under ERISA are sufficient to confer Constitutional standing."); *cf. Soehnlen v. Fleet Owners Ins. Fund*, 844 F.3d 576, 582 (6th Cir. 2016) ("[Plaintiffs] believe that by merely alleging a violation of ERISA rights, they satisfy their obligation under Article III. We disagree.").

Once again, *Feather* is instructive.  There, the court dismissed for lack of standing similar claims that the defendants failed to satisfy ERISA's procedural requirements, including notice and disclosure requirements and written instrument requirements.  2018 WL 3536613, at *5.  In so holding, the court reasoned that the complaint "does not connect these procedural violations to any concrete injury suffered by the Plaintiffs," and "Plaintiffs ignore that intangible injuries must still be connected to a real risk of harm." *Id.*

Likewise, Plaintiff here has not identified any injury with respect to her procedural violation claims.  She merely alleges that various Defendants have violated various provisions of ERISA by failing to provide certain notices and disclosures.  That is not enough.  Absent some

21

concrete harm caused by these alleged failures, no standing exists for the claims in Counts II, III, IV, VI, and VII.[6]

6. **Plaintiff's Claims for Declaratory and Equitable Relief (Count I) Should Be Dismissed for Lack of Standing**

Count I, which asserts claims for declaratory and other equitable relief, should be dismissed for lack of standing for the same reasons as Plaintiff's ERISA underfunding and procedural violation claims.  Like Plaintiff's other claims, declaratory and equitable relief claims are subject to the injury-in-fact requirement to establish constitutional standing.  *See Barry v. Carnival Corp.*, 424 F. Supp. 2d 1354, 1356-58 (S.D. Fla. 2006), *aff'd*, 257 F. App'x 224 (11th Cir. 2007); *Hall v. Aetna Life Ins. Co.*, 759 F. Supp. 2d 1321, 1326-27 (N.D. Fla. 2010). Because Count I is based on the same underlying conduct as Plaintiff's underfunding claims and other ERISA claims, Plaintiff has failed to allege an injury sufficient to establish standing for the same reasons.  The court in *Feather* dismissed a similar claim for declaratory and equitable relief for lack of standing on this basis.  *See* 2018 WL 3536613, at *4-5.

7. **Plaintiff Lacks Standing to Assert Any Claims Concerning the Merged Plan Because She Is Not a Participant in the Plan**

Plaintiff's claims concerning the Merged Plan also suffer from another fatal flaw: Plaintiff is not a participant in or beneficiary of that plan.  Although Plaintiff alleges that she is a participant in both Plans, 2d Am. Compl. ¶ 14, that is simply incorrect.  She is not a participant in the Merged Plan and never has been.[7]  *See* Freeman Decl. ¶ 5.[8]  Simply put, because Plaintiff

---

[6] Count III—alleging the failure to provide a notice that the Plans did not satisfy minimum funding requirements— should be dismissed for the additional reason that it is derivative of Plaintiff's claims of ERISA underfunding in Count V.  Because Plaintiff cannot plead an injury sufficient to establish standing for her underfunding claims, it follows that she also lacks the requisite injury to pursue her notice of underfunding claims.

[7] Nor has she ever been a participant in or beneficiary of the University Community Hospital, Inc. Retirement Plan or the Helen Ellis Memorial Hospital Pension Plan, the two plans that were merged into the Merged Plan.  *See* Freeman Decl. ¶ 5.

is not a participant in the Merged Plan, she does not have standing to assert claims regarding the plan.

A plaintiff cannot have suffered injury in connection with a plan that is either concrete or particularized if the plaintiff has nothing to do with that plan. *See Spokeo*, 136 S. Ct. at 1548 ("For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.' . . . A 'concrete' injury . . . must actually exist."). Consistent with this principle, courts have found that plaintiffs have no constitutional standing to file lawsuits concerning employee benefit plans in which they are not participants. *See In re Reliant Energy ERISA Litig.*, 336 F. Supp. 2d 646, 652-54 (S.D. Tex. 2004) (concluding that the plaintiff lacked standing to bring claims against defendant RRI and noting that the plaintiff "is a participant in the [separate] REI Savings Plan. He has never been employed by RRI and has never been a participant, beneficiary, or fiduciary of any of the RRI plans"); *Berry v. Wells Fargo & Co.*, No. 3:17-cv-304, 2017 WL 7411165, at *5 (D.S.C. July 31, 2017) ("[Plaintiff, a participant in the 'Deferral Plan,'] does not have standing to pursue claims under the [separate] Contribution Plan because he has not alleged that he was a participant or beneficiary nor does he have the potential to become one, and, thus, [plaintiff] has not suffered a personal injury in connection with the Contribution Plan, which makes him ineligible to file suit."); *see also Hoak v. Ledford*, No. 1:15-cv-3983, 2016 WL 8948417, at *6 (N.D. Ga. Sept. 27, 2016) (rejecting plaintiffs' argument that "they can maintain

---

[8] The Court need not, and should not, accept Plaintiff's incorrect assertion that she is a participant in the Merged Plan. It is well-established that "a motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) can be based upon [] a . . . factual challenge to the complaint." *McElmurray v. Consol. Gov't of Augusta-Richmond Cty.*, 501 F.3d 1244, 1251 (11th Cir. 2007). "Factual attacks . . . challenge the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Estate of Hibbard v. Hibbard*, No. 6:18-cv-63, 2018 WL 2445690, at *1 (M.D. Fla. May 31, 2018) (Presnell, J.). "In the face of a factual challenge to subject matter jurisdiction, the burden is on the plaintiff to prove that jurisdiction exists." *OSI, Inc. v. United States*, 285 F.3d 947, 951 (11th Cir. 2002).

a claim [against NCR Officer Plan] despite the fact that none of the named plaintiffs participated in that plan").

That Plaintiff purports to bring her claims on behalf of a class of Merged Plan participants is immaterial—she lacks standing to represent a class of which she is not a member. *See Spokeo*, 136 S. Ct. at 1547 n.6 ("'That a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong.'") (citation omitted); *Sanzone*, 326 F. Supp. 3d at 809 ("In class action litigation, the named plaintiffs purporting to represent a class must establish that they, personally, have standing to bring the cause of action. If the named plaintiffs cannot maintain the action on their own behalf, they may not seek such relief on behalf of the class."); *Hoak*, 2016 WL 8948417, at *13 n.15 ("Prior to certification of any purported ERISA class action, district courts 'must determine that at least one named class representative has Article III standing to raise each class subclaim.'") (citation omitted).

Thus, the Court should dismiss in full all of Plaintiff's claims concerning the Merged Plan.[9]

## B.   The Investment Committee Is Not a Proper Defendant for Any of Plaintiff's ERISA Claims

Plaintiff has added the Investment Committee as a defendant in her Second Amended Complaint and named it in all of her ERISA claims regarding the Merged Plan.  Because the Investment Committee is not a proper defendant for the claims in Counts I, II, III, IV, V, VI, VII, VIII, and IX, those claims should be dismissed as to the committee.

---

[9] Plaintiff should voluntarily withdraw the incorrect allegation that she is a participant in the Merged Plan.  Had Plaintiff performed a reasonable investigation, she should have realized before filing this lawsuit that she was not a participant in the Merged Plan.   If Plaintiff persists with this allegation and Defendants have to continue litigating the issue, Defendants may need to seek further relief from the Court.

1.      **Counts II, IV, and VII Should Be Dismissed Against the Investment Committee, Which Is Not the Administrator of the Merged Plan**

Plaintiff alleges with respect to the Merged Plan that (1) the Merged Plan Committee ***and the Investment Committee*** have violated ERISA by failing to send annual reports (Count II); (2) both committees have violated ERISA by failing to provide annual plan funding notices (Count IV); and (3) both committees should pay discretionary civil penalties for the alleged failure to provide annual plan funding notices and pension benefit statements (Count VII).  As the Court recognized previously, for each of these claims, the applicable section of ERISA states that the person or entity required to provide these notices and disclosures is the "administrator" of the plan.[10]  *See* Mot. to Dismiss Op. at 8-9 ("'Only plan administrators can be sued for violations of ERISA's notice and reporting requirements.'") (quoting *Adair v. Johnston*, 221 F.R.D. 573, 580 (M.D. Ala. 2004)).  ERISA defines the term "administrator" as "the person specifically so designated by the terms of the instrument under which the plan is operated"—in other words, the plan document.  29 U.S.C. § 1002(16)(A)(i).

The Investment Committee cannot be liable for any of these alleged violations because it is not the administrator of the Merged Plan.  The Merged Plan document names the Merged Plan Committee—***not the Investment Committee***—as plan administrator.  Ex. B to Golumbic Decl. at § 2.10; 2d Am. Compl. ¶ 18 ("Defendant Merged Plan Committee serves as an administrator . . . of the Merged Plan.").  Plaintiff does not allege—nor could she—that the Investment Committee is the named administrator of the Merged Plan.  Accordingly, the Investment Committee is not the proper defendant, and cannot be held liable for claims only cognizable against the plan

---

[10] *See* 29 U.S.C. § 1024(a)(1) ("The administrator of any employee benefit plan subject to this part shall file with the Secretary the annual report for a plan year . . . ."); *id.* § 1021(f)(1) ("The administrator of a defined benefit plan to which subchapter III applies shall for each plan year provide a plan funding notice . . . ."); *id.* § 1025(a)(1)(B) ("The administrator of a defined benefit plan . . . shall furnish a pension benefit statement . . . .").

administrator.  *See* Mot. to Dismiss Op. at 8-9.  Counts II, IV, and VII, therefore, should be dismissed with respect to the Investment Committee.

### 2. Counts III, V, and VI Should Be Dismissed Against the Investment Committee, Which Is Not an Employer or Plan Sponsor of the Merged Plan

For three of Plaintiff's claims—Count III (failure to provide notice of ERISA underfunding), Count V (failure to provide minimum funding), and Count VI (failure to establish a plan under an ERISA-compliant written instrument)—ERISA and/or courts provide that the proper defendant is the plan's employer or sponsor.  *See, e.g.*, 29 U.S.C. § 1021(d)(1) (providing that "the employer shall notify each participant and beneficiary . . . of such plan of such failure [to make a required installment or other payment required to meet the minimum funding standard under section 1082]"); 29 U.S.C. § 1082(b)(1) (providing that "the amount of any contribution required by this section . . . shall be paid by the employer responsible for making contributions to or under the plan"); *CIGNA Corp. v. Amara*, 563 U.S. 421, 437 (2011) (observing that "[t]he plan's sponsor (*e.g.,* the employer), like a trust's settlor, creates the basic terms and conditions of the plan, executes a written instrument containing those terms and conditions").  Nowhere in her Second Amended Complaint does Plaintiff allege—nor could she—that the Investment Committee is the plan sponsor for the Merged Plan or the employer responsible for funding the plan.  *See* 2d Am. Compl. ¶ 185 ("At all relevant times, AHS was the 'sponsor' and 'employer' for the Hospital Plan and the Merged Plan."); *see also* Ex. B to Golumbic Decl. at §§ 2.12, 2.22. Accordingly, Counts III, V, and VI should be dismissed as to the Investment Committee.

**3.      Counts VIII and IX for Breach of Fiduciary Duty and Prohibited Transactions Should Be Dismissed Against the Investment Committee Because It Does Not Have Any Duty or Authority Regarding the Challenged Conduct**

In Counts VIII and IX, Plaintiff claims that the Investment Committee breached fiduciary duties and caused prohibited transactions under ERISA by failing to enforce ERISA's minimum funding standards and notice and disclosure requirements with respect to the Merged Plan. Because Plaintiff has failed to plausibly allege that the Investment Committee has any fiduciary duties or authority to enforce these ERISA requirements, Plaintiff has failed to state a claim in Counts VIII or IX.

Plaintiff's breach of fiduciary duty claim in Count VIII should be dismissed as to the Investment Committee because she fails to allege plausibly that the committee had any fiduciary duties with respect to the challenged conduct—namely, enforcing ERISA's funding and procedural requirements with respect to the Merged Plan.  *See* 2d Am. Compl. ¶¶ 160-65. ERISA recognizes two types of fiduciaries: named fiduciaries, who are so designated in the written instrument governing the plan, *see* 29 U.S.C. § 1102(a)(2), and functional fiduciaries, who become fiduciaries by virtue of the actions they take or the authority they assume on behalf of the plan, *see id.* § 1002(3)(21).[11]  And, unless a person or entity is a named fiduciary, that person or entity is a fiduciary only "*to the extent*" that one "exercises any discretionary authority or discretionary control respecting management of such plan" or "has any discretionary authority or discretionary responsibility in the administration of such plan."  29 U.S.C. § 1002(21)(A)

---

[11] ERISA section 3(21) provides, in pertinent part, that "a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan."  29 U.S.C. § 1002(21)(A).

(emphasis added).  The "to the extent" language is critical, for it indicates that an entity can be a fiduciary for one purpose, without making it a fiduciary for all purposes.  *See, e.g.*, *Pegram v. Herdrich*, 530 U.S. 211, 225-26 (2000) ("In every case charging breach of ERISA fiduciary duty, then, the threshold question is not whether the actions of some person employed to provide services under a plan adversely affected a plan beneficiary's interest, but whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint."); *Carolinas Elec. Workers Ret. Plan v. Zenith Am. Solutions, Inc.*, 658 F. App'x 966, 969 (11th Cir. 2016) ("The fiduciary function is not an 'all-or-nothing concept,' and a defendant is only a fiduciary to the extent that he exercises discretionary authority 'with respect to the particular activity at issue.'") (citations omitted).  In short, for a defendant to be liable for breach of fiduciary duty, it must be a fiduciary for the particular acts or omissions complained of.

Here, Plaintiff's breach of fiduciary duty claim against the Investment Committee cannot survive because she has failed to plead facts sufficient to show that the committee had any fiduciary duty to enforce ERISA's funding or procedural requirements.  Indeed, the Second Amended Complaint is not clear as to what fiduciary duty the Investment Committee purportedly has with respect to the Merged Plan.  *See* 2d Am. Compl. ¶¶ 159-65.  Plaintiff asserts only that "[a]s set forth in its formation charter, [the Investment Committee's] powers include, among other things, determining the investment policy for all retirement and other employee benefit plans, establishing asset allocation policies, reviewing assets, and coordinating with actuaries and other consultants regarding asset growth," *see id.* ¶ 19.[12]  None of these alleged duties includes

---

[12] Plaintiff also claims that the Investment Committee "has the general authority for establishing a funding policy for the Merged Plan," *see* 2d Am. Compl. ¶ 19, but her allegation is invalidated by the Merged Plan document, which provides that "[t]he Employer shall make contributions in such amounts and at such times as determined by the Committee in accordance with a funding method and policy to be established by said Committee"—with "Committee" being defined as the Merged Plan Committee, *see* Ex. B to Golumbic Decl. §§ 2.10, 7.01.

enforcing ERISA's funding or procedural requirements.  To the contrary, from the face of the Second Amended Complaint, the Merged Plan Document, and the Investment Committee charter, it is clear that the Investment Committee was neither a named fiduciary nor a functional fiduciary with respect to funding the Merged Plan, sending notices or disclosures, or enforcing any other ERISA requirement relevant to Plaintiff's claims.  The Merged Plan Document designates several entities as named fiduciaries for the Plan, none of which are the Investment Committee.  *See* Ex. B to Golumbic Decl. § 2.24.  Nor does the Plan Document or the charter designate the Investment Committee to perform any fiduciary function under the Plan that would be relevant to Plaintiff's claims.  *See generally id.*; Ex. C to Golumbic Decl.  Accordingly, because Plaintiff has failed to allege plausibly that the Investment Committee is a fiduciary with respect to the challenged conduct, Count VIII fails to state a claim for fiduciary breach against the committee.

In Count IX, Plaintiff alleges that the Investment Committee engaged in prohibited transactions with respect to the Merged Plan in violation of 29 U.S.C. §§ 1106(a)(1)(B), (a)(1)(D), and (b)(1).[13]  *See* 2d Am. Compl. ¶¶ 166-78.  According to Plaintiff, the Investment Committee violated the prohibited transaction rules by "[b]y failing to enforce the funding obligations created by ERISA and owed to the Merged Plan."  *See id.* ¶¶ 173, 175-76.  As discussed above, however, the Investment Committee has ***no duties*** with respect to enforcing ERISA's funding requirements for the Merged Plan.  For that reason, Count IX should be dismissed with respect to the Investment Committee.  *See Chicago Dist. Council of Carpenters*

---

[13] Under 29 U.S.C. §§ 1106(a)(1)(B) and (a)(1)(D), "[a] fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect" "lending of money or other extension of credit between the plan and a party in interest" or "transfer to, or use by or for the benefit of a party in interest, of any assets of the plan," respectively.  Pursuant to 29 U.S.C. § 1106(b)(1), "[a] fiduciary with respect to a plan shall not . . . deal with the assets of the plan in his own interest or for his own account."

*Welfare Fund v. Caremark, Inc.*, 474 F.3d 463, 471-72 (7th Cir. 2007) (finding that, "[t]o make

out a claim for breach of fiduciary duty under ERISA," including under 29 U.S.C. § 1106, a

plaintiff must show that the defendant "was a fiduciary as that term is defined in the statute and

. . . was acting in its capacity as a fiduciary at the time it took the actions that are the subject of

the complaint").

> 4. **Count I for Declaratory and Equitable Relief Should Be Dismissed as to the Investment Committee Because the Committee Has No Duty or Authority for the ERISA Requirements on Which the Claim Is Based.**

In Count I, Plaintiff seeks declaratory and injunctive relief, and requests that the Court

order the Investment Committee to "bring the Hospital Plan into compliance with ERISA,"

including the ERISA funding requirements and procedural requirements referenced in the other

causes of action.  2d Am. Compl. ¶ 118.  To begin with, as discussed in Section III.D below, the

Investment Committee is not a proper defendant for claims regarding the Hospital Plan because

the committee has nothing to do with the Hospital Plan.  *See generally* Ex. A. to Golumbic Decl.;

*see also* 2d Am. Compl. ¶ 19 (alleging that the Investment Committee has responsibility for the

Merged Plan, not the Hospital Plan).  However, even if Plaintiff had pleaded declaratory and

injunctive relief claims against the Investment Committee with respect to the Merged Plan, those

claims would be invalid.  That is because such a claim would be wholly derivative Plaintiff's

claims concerning violations of ERISA's funding requirements and procedural requirements—

and, as shown in Sections III.B.1 and 2 above, Plaintiff has failed to adequately allege that the

Investment Committee has any duties or authority with respect to those funding and procedural

requirements.

**C.     Counts VIII and IX Should Be Dismissed as to All Defendants for Failure to Put Defendants on Notice of the Claims Against Them**

Plaintiff's Second Amended Complaint renews from her previous complaint several ill-defined and conclusory claims against all Defendants (except AHS) for breach of fiduciary duty and prohibited transactions under ERISA.  In Count VIII, Plaintiff raises claims for breach of fiduciary duty under section 1132(a)(2).  2d Am. Compl. ¶¶ 159-65.  In Count IX, Plaintiff alleges that certain Defendants engaged in prohibited transactions, which are unlawful for a fiduciary under sections 1106(a)(1)(B), (a)(1)(D), and (b)(1).  *Id.* ¶¶ 166-78.  Plaintiff's claims boil down to the theory that Defendants breached fiduciary duties to the Plans and engaged in prohibited transactions by not causing the Plans to comply with ERISA.  Even if ERISA applied to the Plans, however, these claims should be dismissed.

In the Motion to Dismiss Opinion, the Court concluded that Plaintiff's fiduciary breach and prohibited transaction claims were "inadequately pled" in her Amended Complaint and dismissed the claims without prejudice on the grounds that they "combine all Defendants together and fail to distinguish between actions taken by individual Defendants," and "also do not differentiate between violations with respect to the different plans."  Mot. to Dismiss Op. at 9.  Plaintiff has failed to correct these deficiencies in her Second Amended Complaint.

Although Plaintiff has taken some minor steps in her latest pleading to differentiate her claims between the Hospital Plan and the Merged Plan, her allegations still fall short of satisfying minimum pleading requirements.  A number of her allegations continue to treat the two separate plans as though they were a single plan and fail to specify which acts and omissions pertain to which of the plans.  *See* 2d Am. Compl. ¶ 163 ("Defendants . . . have never enforced any of the provisions of ERISA as set forth above with respect to the Plans. . . ."); *id.* ¶ 165 ("The failure of Defendants to enforce the funding obligations owed to the Plans has resulted in a

31

loss to the Plans. . . ."); *id.* ¶ 176 ("By failing to enforce the funding obligations created by ERISA and owed to the Plans, Defendants used the Plans' assets in AHS's interest. . . .").

Moreover, regardless of whether Plaintiff has made separate allegations concerning the two plans, she has once again failed to adequately differentiate between the Defendants to put them on notice of the claims and allegations against each one.  For example, Plaintiff now groups the Retirement Board and the Hospital Plan Committee together in some of her allegations concerning the Hospital Plan, but she makes no effort to allege which of those defendants did what with respect to the plan.  *See, e.g.*, *id.* ¶ 163 ("[T]he Retirement Board and the Hospital Plan Committee have acted disloyally and failed to exercise due care to ensure that the Hospital Plan at all times satisfies ERISA's minimum funding standards as well as ERISA's notification and disclosure standards.").  She does the same with respect to the Merged Plan Committee and the Investment Committee regarding the Merged Plan, grouping them together but not differentiating between them.  *See, e.g.*, *id.* ¶ 175 ("By failing to enforce the funding obligations created by ERISA and owed to the Merged Plan, Defendants the Merged Plan Committee and [Investment Committee] used the Plan's assets for Defendant AHS's own benefit. . . .").  In other allegations, Plaintiff continues to lump all of these four defendants together without differentiating among their respective acts and omissions.  *See, e.g., id.* ¶ 163 ("Defendants Retirement Board, the Hospital Plan Committee, the Merged Plan Committee, and EPIC have never enforced any of the provisions of ERISA as set forth above with respect to the Plans.").

Although Rule 8 requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," that statement must be sufficient to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  Plaintiff's new complaint still fails to meet this bare

minimum standard.   She continues to combine Defendants together and makes no effort whatsoever to allege what each Defendant supposedly did or did not do that caused a breach of fiduciary duty or prohibited transaction with respect to one plan or the other.   Accordingly, Counts VIII and IX should be dismissed against all Defendants.   *See, e.g.*, *Peraza v. Univa Sports, LLC*, No. 14-22430, 2015 WL 11233130, at *5 (S.D. Fla. Feb. 20, 2015) (dismissing claims "for failure to comply with Rule 8" because "there is not a single factual allegation specific to any individual Defendant").

**D.   Plaintiff Has Improperly Named the Retirement Board, the Hospital Plan Committee, the Merged Plan Committee, and the Investment Committee as Defendants for Several Claims (Counts I, III, V, and IX) Regarding Plans They Have Nothing to Do With**

As the Court observed—and Plaintiff conceded—Plaintiff's Amended Complaint included "several claims against the Retirement Board and the Hospital Plan Committee with respect to the Merged Plan, and several claims against the Merged Plan Committee with respect to the Hospital Plan, even though the Retirement Board and the Hospital Plan Committee had nothing to do with the Merged Plan[] and the Merged Plan Committee had nothing to do with the Hospital Plan."  Mot. to Dismiss Op. at 10.  Plaintiff attempts to remedy this issue, but the defect persists in several of her claims.  *See* 2d Am. Compl. ¶ 118 (alleging in Count I that "Plaintiff further seeks orders directing AHS, the Merged Plan Committee, and [the Investment Committee] to bring the Hospital Plan into compliance with ERISA"); *id.* ¶¶ 126-28 (styling Count III as against the Retirement Board, Hospital Plan Committee, Merged Plan Committee, and Investment Committee but only making allegations against AHS) ; *id.* ¶¶ 134-42 (alleging in Count V that "[t]he Retirement Board, the Hospital Plan Committee, the Merged Plan Committee, and [Investment Committee] have failed . . . to ensure that the Plans are adequately funded in accordance with minimum funding standards of ERISA . . . ."); *id.* ¶ 176 (alleging in

Count IX that "[b]y failing to enforce the funding obligations created by ERISA and owed to the Plans, Defendants used the Plans' assets in AHS's interest in violation of ERISA section 406(b)(1), 29 U.S.C. § 1106(b)(1)."). The Court should dismiss Counts I, III, V, and IX to the extent that they include claims against the Retirement Board and the Hospital Plan Committee with respect to the Merged Plan, and to the extent that they include claims against the Merged Plan Committee and the Investment Committee with respect to the Hospital Plan.

E.     **Counts III, V, and VI Should Be Dismissed Against the Retirement Board, the Hospital Plan Committee, and the Merged Plan Committee, None of Which are the Employers or Plan Sponsors of Either Plan**

Counts III, V, and VI should be dismissed as to the Retirement Board, the Hospital Plan Committee, and the Merged Plan Committee for the same reason that those claims are invalid against the Investment Committee. As explained in Section III.B.2 above, these three claims are cognizable only against a plan's employer or sponsor. Plaintiff does not allege that the Retirement Board, the Hospital Plan Committee, or the Merged Plan Committee is an employer or sponsor of either the Hospital Plan or the Merged Plan. Indeed, the plan documents for both Plans make clear that these Defendants are administrators of their respective plans, not employers or sponsors. *See* Ex. A to Golumbic Decl. at §§ 1.1, 1.3, 7.1, 7.4, 7.5; Ex. B to Golumbic Decl. at § 8.01.

F.     **Plaintiff's State Law Claims for Breach of Contract and Breach of Fiduciary Duty (Counts XI and XII) Should Be Dismissed**

1.     **The Court Lacks Supplemental Jurisdiction over Plaintiff's State Law Claims**

Plaintiff asserts in her Second Amended Complaint that the Court "has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it is a civil action arising under the laws of the United States, and pursuant to 29 U.S.C. § 1332(e)(1)." 2d Am. Compl. ¶ 11. She has removed allegations previously stated in her Amended Complaint that the Court "has

supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367" and

"pursuant to 28 U.S.C. § 1332(d)(2)."  Dkt. No. 47 (Am. Compl.) at ¶¶ 13-14.  Without those

allegations, Plaintiff's Second Amended Complaint is similar to the complaint in *Smith v. OSF*

*HealthCare*, a church plan case in which the plaintiffs also did not allege that the court had

jurisdiction under 28 U.S.C. § 1332(d)(2).  *Compare* 2d Am. Compl. ¶ 11 *with* 4th Am. Class

Action Compl., *Smith v. OSF HealthCare Sys.*, No. 3:16-cv-00467-SMY-RJD, ¶ 10 (S.D. Ill.

Oct. 12, 2017), ECF No. 138.  In *Smith*, the court granted a motion to dismiss state law claims

raised in the alternative to ERISA claims, similar to Plaintiff's claims here, explaining:

> ERISA is the only basis for this action to be in federal court.  (Doc. 138 at ¶ 10).
> Plaintiffs have pled the state law claims "in the alternative" to the ERISA counts
> because they recognize the two approaches are mutually exclusive.  If the Court
> were to find that ERISA applies, the state law claims must be dismissed as
> preempted.  On the other hand, if the Court finds that ERISA does not apply, then
> the state law claims are not preempted, but lack any basis for federal jurisdiction
> and the Court must dismiss the case.  In either case, the result is the state law
> counts being dismissed.

> Given the absolute conflict between complete preemption and supplemental
> jurisdiction, the state law claims are poisonous to federal subject-matter
> jurisdiction.  Plaintiffs can either proceed on their state law claims or they can be
> in federal court, but not both.  There is no point in continuing to litigate these
> claims in this Court because they are going to be dismissed sooner or later.  The
> Court will therefore exercise its discretion and dismiss them without prejudice
> now for lack of subject matter jurisdiction.

*Smith v. OSF HealthCare Sys.*, No. 16-CV-467-SMY-RJD, 2017 WL 6021625, at *4 (S.D. Ill.

Dec. 5, 2017).  *Smith*'s reasoning applies equally here.  Because Plaintiff alleges no independent

basis for jurisdiction for her state law claims, the Court should dismiss Counts XI and XII.

### 2.  Plaintiff's State Law Claims Fail to Meet Minimum Pleading Standards to Put Defendants on Notice of the Claims Against Them

Like Plaintiff's ERISA fiduciary breach claims, *see* Section III.C, her state law claims for

breach of contract and breach of fiduciary duty are insufficiently pled because she fails to allege

facts distinguishing among the multiple Defendants she has sued.  Plaintiff fails to put

Defendants on notice of what claims she is making against each of them, and her claims should be dismissed.

With respect to Count XI, Plaintiff continues to assert that her breach of contract claim is "against Defendants," 2d Am. Compl. ¶¶ 183-194, despite the Court pointing out that "Plaintiff concedes that the contract claim is only against AHS," Mot. to Dismiss Op. at 11.  Plaintiff has not added any allegations to this count describing how any other Defendant breached a contract with Plaintiff.  Moreover, Plaintiff still does not differentiate between contractual obligations in the Hospital Plan and the Merged Plan.  Rather, Plaintiff has made her breach of contract allegations *more* nonspecific in her new complaint, referring solely to "the employment bargain" between AHS and its hospital employees.  *See, e.g.*, 2d Am. Compl. ¶ 184.  She fails to allege where in either the Hospital Plan document or the Merged Plan document (or any other document) this supposed "employment bargain" exists—indeed, she fails to distinguish between these two plans at all, instead repeatedly referring to "the Plans."  *See id.* ¶¶ 190-94.

In Count XII, which claims breach of fiduciary duty, although Plaintiff makes separate allegations with respect to the Hospital Plan and the Merged Plan, she still lumps together multiple Defendants indiscriminately.  Specifically, the allegations with respect to the Hospital Plan are raised against "AHS, the Retirement Board, and the Hospital Plan Committee," and the allegations concerning the Merged Plan are raised against "AHS, the Merged Plan Committee, and [the Investment Committee]."  *See id.* ¶¶ 210-11.  There is no effort to be clear about what each Defendant allegedly did and/or did not do to breach its fiduciary duties.  As the Court recognized in the Motion to Dismiss Opinion, such indiscriminate allegations "do[] not put each Defendant on fair notice of the claims against it, and . . . should be dismissed as inadequately

pled."  Mot. to Dismiss Op. at 12 (citing *Oginsky v. Paragon Props. of Costa Rica LLC*, 784 F.

Supp. 2d 1353, 1377 (S.D. Fla. 2011)).

### 3.      Plaintiff's State Law Claims Fail for Lack of Standing

As shown in Section III.A.2, Plaintiff lacks standing for her ERISA underfunding claims

because the alleged "risk" to her benefits is not a concrete injury that is "actual or imminent."

Florida courts impose requirements for standing that echo the federal requirements:

> There are three requirements that constitute the irreducible constitutional
> minimum for standing.  First, a plaintiff must demonstrate an injury in fact, which
> is concrete, distinct and palpable, and actual or imminent.  Second, a plaintiff
> must establish a causal connection between the injury and the conduct complained
> of.  Third, a plaintiff must show a substantial likelihood that the requested relief
> will remedy the alleged injury in fact.

*Giuffre v. Edwards*, 226 So. 3d 1034, 1039 (Fla. Dist. Ct. App. 2017) (quoting *State v. J.P.*, 907

So. 2d 1101, 1113 n.4 (Fla. 2004)).[14]  Similar to her ERISA claims, Plaintiff's only allegations of

injury in her state law claims (Counts XI and XII) are purely speculative claims of potential

future losses: (1) AHS's "fail[ure] to make sufficient contributions has left the Plans significantly

underfunded, creating *a substantial risk* that the Plans will be unable to pay promised pension

benefits"; and (2) "[a]s a direct and proximate result of the fiduciary breaches . . . [the Plans']

trust(s) and [their] beneficiaries, including Plaintiff and the other Class members, have been

deprived of contributions to which they are entitled and the [Plans are] significantly

underfunded, creating *a substantial risk* that [the Plans] will be unable to pay to Plaintiff and the

other Class members the pension benefits to which they are entitled."  2d Am. Compl. ¶¶ 193,

212-13 (emphases added).  As demonstrated above, Plaintiff has failed to allege that she or any

---

[14] As discussed below, under conflict of laws principles, more than one state's law may govern Plaintiff's state law
claims with respect to the Hospital Plan and the Merged Plan.  Courts in the District of Columbia and Illinois—two
other jurisdictions whose laws may apply—have standards for standing that also are similar to the federal standard.
*See Randolph v. ING Life Ins. & Annuity Co.*, 973 A.2d 702, 705-06 (D.C. 2009); *Glisson v. City of Marion*, 720
N.E.2d 1034, 1039-40 (Ill. 1999).  Thus, it is immaterial for purposes of assessing standing which state's law
applies.

member of the putative class has not received benefits from the Hospital Plan or Merged Plan as a result of the alleged underfunding.  Her allegations of "risk" do not rise to the level of injuries that are "actual and imminent" as required to establish standing for her state law claims.

### 4. Count XI Should Be Dismissed Because Plaintiff Fails to State Claim for Breach of Contract

#### a. Plaintiff Has Failed to Make Sufficient Allegations that Any Defendant Breached Any Contractual Obligation

Even assuming the Hospital Plan and Merged Plan documents constitute enforceable contracts under common law, Plaintiff has failed to make plausible allegations that AHS or any other Defendant breached any obligation in either Plan.[15]  To state a claim for breach of contract, Plaintiff must plead and establish: (1) the existence of a contract; (2) a material breach of that contract; and (3) damages resulting from the breach.  *See Friedman v. N.Y. Life Ins. Co.*, 985 So. 2d 56, 58 (Fla. Dist. Ct. App. 2008).[16]

To begin with, as explained above, Plaintiff still claims to be asserting Count XI against all Defendants, despite having conceded that AHS is the only Defendant whom she alleges had or breached any contractual obligations.  *See* Mot. to Dismiss Op. at 11 ("Plaintiff concedes that the contract claim is only against AHS.").  She makes no allegations against any Defendant but

---

[15] The conflict of law principles to be applied in federal court are those of the forum state—here, Florida.  *Fioretti v. Mass. Gen. Life Ins. Co.*, 53 F.3d 1228, 1235 (11th Cir. 1995).  Under Florida law, where the parties to a contract have expressly selected a governing body of law, that is the law applied.  *Dep't of Motor Vehicles for Use & Benefit of Fifth Ave. Motors, Ltd. v. Mercedes-Benz of N. Am., Inc.*, 408 So.2d 627, 629 (Fla. Dist. Ct. App. 1981).  The Merged Plan states that it is governed by Florida law, Ex. B to Golumbic Decl. at § 9.05, meaning that Florida law applies to Plaintiff's breach of contract claim as to the Merged Plan.  The Hospital Plan is governed by District of Columbia law.  That is because the Hospital Plan's trust agreement is incorporated into the Hospital Plan, Ex. A to Golumbic Decl. at § 5.3, and that agreement provides that it shall be governed by District of Columbia law, Ex. E to Golumbic Decl. at § 13(a).  District of Columbia law therefore applies to breach of contract claims regarding the Hospital Plan.

[16] Under District of Columbia law, the elements of breach of contract are substantially the same: the plaintiff "must establish (1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by breach."  *Tsintolas Realty Co. v. Mendez*, 984 A.2d 181, 187 (D.C. 2009).

AHS in Count XI.   As the Court did with the breach of contract claim in her Amended Complaint, the Court should dismiss this claim as to all Defendants other than AHS.

The breach of contract claim should also be dismissed because Plaintiff still has failed to adequately allege a contractual duty that any Defendant breached.   The Court found that Plaintiff's breach of contract claim in her Amended Complaint "fails to differentiate between the Plans and their respective contractual provisions" and concluded that "[w]ith only references to 'promises,' 'obligations,' and 'good faith,' the Amended Complaint is not specific enough to state a claim for breach of at least two different contracts."   Mot. to Dismiss Op. at 11.   In response to the Court's opinion, Plaintiff's restated breach of contract claim is ***even less specific***. She makes only vague references to "the employment bargain with [AHS's] employees" and alleges without support from either plan document that "[o]ne of those benefits by AHS as part of the employment bargain was to fully and properly fund the pensions of Plaintiff and the other Class members and to pay defined pension benefits upon retirement in exchange for their continued employment."   2d Am. Compl. ¶ 184.   Despite having had the Hospital Plan document and the Merged Plan document for many months, Plaintiff fails to point to any provision in either plan establishing these supposed contractual obligations.   Moreover, as noted above, Plaintiff has once again conflated the Hospital Plan and the Merged Plan in this cause of action.   Plaintiff's breach of contract claim therefore should be dismissed for failure to state a claim.

b.   Plaintiff Has Failed to Adequately Allege Damages

As noted above, a valid breach of contract claim requires Plaintiff to allege that she suffered harm.   The only purported harm Plaintiff claims to have suffered—which is the same harm pleaded in her Amended Complaint—is being "deprived" of a "contractual right to a sufficiently funded trust" and that underfunding of the Plans has created a "substantial risk that the Plans will be unable to pay promised pension benefits."   2d Am. Compl. ¶ 193.   As explained

above, Plaintiff has failed to properly allege that either Plan is underfunded and, even if she had, the risk of future nonpayment of benefits is remote and speculative.  She still does not allege that she or any other participant has ever missed benefit payments under either Plan.  Such allegations of hypothetical injury are insufficient to support a breach of contract claim.

### 5. Count XII Should Be Dismissed Because Plaintiff Fails to State a Claim for Breach of Fiduciary Duty

Plaintiff has failed to adequately plead a claim for breach of fiduciary duty under state law against any of the Defendants.[17]  "The elements of a claim for breach of fiduciary duty are: (1) the existence of a fiduciary duty; (2) the breach of that duty; and (3) damage proximately caused by that breach."  *Schwab v. Hites*, 896 F. Supp. 2d 1124, 1133 (M.D. Fla. 2012).[18]

---

[17] Under Florida's choice of law rules, courts apply four factors to determine which state's law to apply to a claim for breach of fiduciary duty: "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil[e], residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered.  *See, e.g.*, *Trumpet Vine Invs., N.V. v. Union Capital Partners I, Inc.*, 92 F.3d 1110, 1115-16 (11th Cir. 1996); *State Farm Mut. Auto. Ins. Co. v. Duckworth*, 660 F. Supp. 2d 1323, 1338-39 (M.D. Fla. 2009).  Regardless of which state's law applies to Plaintiff's breach of fiduciary duty claim, it should be dismissed.  Defendants submit that Florida or Illinois law may apply to Count XII as to the Merged Plan because Plaintiff is a resident of Illinois, 2d Am. Compl. ¶ 14, AHS is a resident of Florida, *id.* ¶ 15, and the Merged Plan states that it is governed by Florida law, *see* Section III.F.4.a.  *See Gulf Grp. Holdings, Inc. v. Coast Asset Mgmt. Corp.*, 516 F. Supp. 2d 1253, 1270 (S.D. Fla. 2007) (finding that "the parties' relationship is centered in Florida" where the parties' agreement contained a Florida choice of law provision).  Further, Count XII as to the Hospital Plan could be governed by Illinois law, because Plaintiff resides in Illinois; District of Columbia law, under a choice of law provision incorporated into the plan document, *see* Section III.F.4.a; or Florida law, because of AHS's residence in Florida.  Because, as shown herein, the legal standard for breach of fiduciary duty is the same in each of these states and the outcome is the same regardless of which state's law applies, a "false conflict" exists, and Plaintiff's breach of fiduciary duty claim should be dismissed, regardless of which state's law applies.  *See Gulf Grp. Holdings, Inc.*, 516 F. Supp. 2d at 1271 ("false conflict" exists when, among other circumstances, "the laws of different states are the same").

[18] *See also Lawlor v. N. Am. Corp. of Ill.*, 983 N.E.2d 414, 433 (Ill. 2012) ("To state a claim for breach of fiduciary duty, it must be alleged and ultimately proved: (1) that a fiduciary duty exists; (2) that the fiduciary duty was breached; and (3) that such breach proximately caused the injury of which the party complains."); *Henok v. Chase Home Fin., LLC*, 915 F. Supp. 2d 162, 168 (D.D.C. 2013) ("To state a claim for breach of fiduciary duty under D.C. law, a plaintiff must allege that '(1) defendant owed plaintiff a fiduciary duty; (2) defendant breached that duty; and (3) to the extent plaintiff seeks compensatory damages—the breach proximately caused an injury.'").

a.    <u>Plaintiff Has Failed to Make Sufficient Allegations that AHS is a Fiduciary as to the Hospital Plan</u>

Plaintiff fails to plead how AHS meets the definition of a fiduciary with respect to the Hospital Plan.  Instead, she makes the conclusory allegations that AHS is "a *de facto* and/or *de jure* fiduciary of the Hospital Plan pursuant to the Plan's documents" and is "obligated by the Hospital Plan's documents to take actions in accordance with the provisions of the Plan and had a duty to establish funding policies to meet the financial requirements of the Plan.  *See* 2d Am. Compl. ¶¶ 200, 205.  To begin with, contrary to Plaintiff's allegations, nowhere in the Hospital Plan document is AHS even mentioned, let alone named as a fiduciary.  *See generally* Ex. A to Golumbic Decl.

Moreover, Plaintiff has failed to allege adequately that AHS satisfies the definition of fiduciary under common law with respect to the Hospital Plan.  Under Florida law, a fiduciary relationship can be express (*i.e.*, by agreement) or implied.  *Schwab*, 896 F. Supp. 2d at 1133.  "'An implied fiduciary relationship will lie when there is a degree of dependency on one side and an undertaking on the other side to protect and/or benefit the dependent party.'"  *Reuss v. Orlando Health, Inc.*, 140 F. Supp. 3d 1299, 1304 (M.D. Fla. 2015) (citations omitted).[19]  The Second Amended Complaint fails to address the definition of a fiduciary under any specific forum's law and fails to make allegations showing that AHS is a fiduciary under any definition.  For example, Plaintiff does not allege that she was involved in a relationship of trust and confidence with AHS, or that she was in a position of inequality, dependence, weakness, or lack

---

[19] Under Illinois law, "[a] fiduciary duty may arise as a matter of law from the existence of a particular relationship, such as an attorney-client or principal-agent relationship."  *Ogdon v. Hoyt*, No. 04 C 2412, 2005 WL 66039, at *7 (N.D. Ill. Jan. 11, 2005).  In the District of Columbia, "[w]hile the mere existence of a contract typically does not create a fiduciary duty, a fiduciary relationship may exist 'where circumstances show that the parties extended their relationship beyond the limits of the contractual obligations to a relationship founded upon trust and confidence.'"  *Dorsey v. Am. Express Co.*, 680 F. Supp. 2d 250, 254 (D.D.C. 2010) (citations omitted).

of knowledge relative to AHS. Thus, Plaintiff has failed to adequately plead that AHS was a fiduciary as to the Hospital Plan, thereby invaliding her claim as to AHS.[20]

      b.      <u>Plaintiff Has Failed to Make Sufficient Allegations that Any Defendant Breached Fiduciary Duties</u>

Even if Defendants qualified as fiduciaries and owed fiduciary duties as to either Plan under state law, Plaintiff has failed to adequately allege a breach of such duties. Plaintiff's *only* allegation of a breach of Defendants' supposed fiduciary duties is that Defendants "fail[ed] to establish a funding policy that was sufficient to fully fund the [respective Plan] trust," and did not compel AHS "to make contributions that were sufficient to fund all accrued benefits under the Plans." 2d Am. Compl. ¶¶ 210-11. These allegations are insufficient and conclusory. To begin with, Plaintiff fails to make any plausible allegations that any Defendant had a duty to establish a funding policy to fully fund the Plans or make contributions "sufficient to fund all accrued benefits." Even if such duties existed, Plaintiff fails to plead any legally sufficient facts showing that the funding policies for either the Hospital Plan or the Merged Plan were inadequate. She does not plead what the funding policies were, what an adequate funding policy would have been, or how the Plans' funding policies supposedly fell short. The only supporting

---

[20] Plaintiff also fails to plausibly allege that any Defendants are trustees "within the meaning of the common law of trusts." 2d Am. Compl. ¶¶ 198-99, 201-02. First, no Defendant is a trustee under the Hospital Plan, as shown in the plan document and trust agreement. *See* Ex. A to Golumbic Decl. at § 1.30; Ex. E to Golumbic Decl. at 1. Under the Merged Plan, the trustee is "appointed by [the Merged Plan Committee]," and Plaintiff does not allege that any Defendant meets that definition. *See* Ex. B to Golumbic Decl. at § 2.38. Second, Plaintiff has alleged no facts showing that the Retirement Board or Hospital Plan Committee is a trustee with respect to the Merged Plan, or that the Merged Plan Committee or Investment Committee is a trustee for the Hospital Plan. *See* Section III.E. Third, Plaintiff alleges that Defendants have various duties "as common law trustees," 2d Am. Compl. ¶ 207, but she fails to identify any specific duties under either the Hospital or Merged Plan documents, which would be the source of any trustee duties. *See, e.g., Berlinger Wells Fargo, N.A. v. Berlinger*, No. 2:11-CV-459, 2016 WL 740521, at *10 (M.D. Fla. Feb. 25, 2016) (noting under Florida law that "[t]he specific obligations of a trustee are found in the trust documents" and "'[f]rom the trust, the trustee derives the rule of his conduct, the extent and limit of his authority, the measure of his obligation'") (citations omitted); *Stuart v. Cont'l Ill. Nat'l Bank & Tr. Co. of Chicago*, 369 N.E.2d 1262, 1271 (Ill. 1977) ("It is axiomatic that the limits of a trustee's powers are determined by the instrument which creates the trust."); *Anderson v. White*, 2 App. D.C. 408, 419 (D.C. Cir. 1894) ("The terms of the instrument measure the powers and prescribe the duties of the trustees.").

"fact" Plaintiff alleges is the assertion that the Plans are "significantly underfunded," *id.* ¶¶ 212-13, which is unfounded as shown above.  Indeed, these allegations of an inadequate funding policy are particularly implausible given that Plaintiff has not (and could not) assert that she has failed to receive any benefits promised under either Plan.

c.    <u>Plaintiff Has Failed to Make Sufficient Allegations that Any Breach of Fiduciary Duty Caused Her Harm</u>

Plaintiff's breach of fiduciary duty claim also should be dismissed because she fails to make legally sufficient allegations that she was harmed.  The only alleged harm to Plaintiff caused by the claimed breaches of fiduciary duty is a "substantial risk that the [Plans] will be unable to pay to Plaintiff and the other Class members the pension benefits to which they are entitled."  *Id.* ¶¶ 212-13.  Once again, the mere speculative allegation of risk is insufficient to confer standing, let alone support a claim of harm sufficient to make out a breach of fiduciary duty.  *See, e.g.*, *K.M. v. Fla. Dep't of Health*, No. 3D16-23, 2017 WL 6598525, at *4 (Fla. Dist. Ct. App. Dec. 27, 2017) (dismissing case where allegations of risk were "too speculative . . . to satisfy the specific injury requirement necessary to establish standing").[21]

**G.    The Court Should Dismiss the Second Amended Complaint With Prejudice**

Dismissal with prejudice is appropriate at this juncture because, despite multiple opportunities to address the deficiencies in her pleadings, Plaintiff's Second Amended Complaint still fails to state any claims against Defendants.  *See Eiber Radiology, Inc. v. Toshiba Am. Med. Sys., Inc.*, 673 F. App'x 925, 930 (11th Cir. 2016) (affirming dismissal with prejudice, reasoning that "[o]ver the course of the proceeding below, Plaintiff—and its counsel—was offered ample

---

[21] *Maglio v. Advocate Health & Hosps. Corp.*, 40 N.E.3d 746, 754 (Ill. Ct. App. 2015) (observing that an "arguably increased risk" of harm "is insufficient to confer standing"); *Randolph*, 973 A.2d at 709 (concluding that "allegations about the risk of identity theft . . . do not state the type of injury required to maintain a suit for common-law breach of fiduciary duty").

opportunity to state a claim on which relief could be granted").  Although she has had the relevant documents in her possession for months and had the benefit of the Court's guidance from the Motion to Dismiss Opinion, Plaintiff still cannot satisfy her pleading requirements.  It has become clear that Plaintiff and her counsel cannot cure these deficiencies by repleading.  *See Lewis v. United States*, 502 F. App'x 862, 863 (11th Cir. 2012) ("[W]e conclude that it was not an abuse of discretion for the district court to dismiss the complaint with prejudice, where any amendment to the complaint would not have cured the lack of subject matter jurisdiction, a fatal deficiency."); *Arthur v. JP Morgan Chase Bank, NA*, 569 F. App'x 669, 679 (11th Cir. 2014) ("[D]ismissal with prejudice is appropriate when a more carefully drafted complaint would not state a claim for relief.").  Plaintiff should not be given a fourth opportunity to state her claims—the Court should dismiss the Second Amended Complaint with prejudice.

## IV.   CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss the Second Amended Complaint in full.

Dated: November 8, 2018                    Respectfully submitted,

                                           *s/ Lars C. Golumbic*
                                           Lars C. Golumbic (admitted *pro hac vice*)
                                           Sean C. Abouchedid (admitted *pro hac vice*)
                                           GROOM LAW GROUP, CHARTERED
                                           1701 Pennsylvania Ave., NW, Ste. 1200
                                           Washington, DC 20006
                                           Tel: (202) 861-6615; Fax: (202) 659-4503
                                           Email:  lgolumbic@groom.com
                                                   sabouchedid@groom.com

                                           Walter A. Ketcham, Jr.
                                           Florida Bar No. 156630
                                           Grower, Ketcham, Eide, Telan & Meltz, P.A.

PO Box 538065
Orlando, FL  32853-8065
Tel: (407) 423-9545; Fax: (407) 425-7104
Email:  waketcham@growerketcham.com
       enotice@growerketcham.com
       lsase@growerketcham.com

*Counsel for Defendants*

## **REQUEST FOR ORAL ARGUMENT**

Due to the complexity and importance of the issues raised in this Motion, Defendants respectfully request oral argument on the Motion pursuant to Local Rule 3.01(j). Defendants estimate that that oral argument will require half an hour for each side.

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on the 8th day of November, 2018, I electronically filed the foregoing with the Clerk of the Courts by using the ECF system, which will send a notice of electronic filing to the following counsel of record: William J. Sheppard, Esquire, Bryan DeMaggio, Esquire at sheplaw@att.net; Thomas J. McKenna, Esquire at tjmckenna@gme-law.com; and Gregory M. Egleston, Esquire at gegleston@gme-law.com.

*/s Lars C. Golumbic*_____
Lars C. Golumbic